Our final case, 21-6992 United States v. Powell, I think also involves a lease agreement, but thankfully not the FICRA. Ms. Maloney, go ahead. Good morning, and may it please the Court. Morgan Maloney for the appellant, Mr. Nathaniel Powell. Mr. Powell's sentencing counsel failed to do the bare minimum. He failed to investigate a lease, and Mr. Powell is paying for that error with years of his life. Under both, Mr. Powell has met both elements of the Strickland test. First, because he failed to investigate the lease, a key piece of evidence handed to him on a silver platter. Sentencing counsel's performance was deficient. And second, because this failure caused the sentencing court to rely on the wrong guidelines range at sentencing, under this court's decision in United States v. Freeman, that deficient performance prejudiced Mr. Powell. So turning to Strickland's first performance. At sentencing, the government bore the burden of demonstrating that Mr. Powell, one, maintained a premise, two, for the purpose of distributing narcotics. Prior to sentencing, Mr. Powell told his counsel that the apartment wasn't his. He told him that Ms. Wilson, the government's sole witness, was lying, and that the apartment wasn't used for the purpose of distributing narcotics. Yet following that conversation, defense counsel did nothing. He made no factual investigation whatsoever into the basis of the premise enhancement. At sentencing, the government's evidence in support of the sentencing enhancement was slim, at best. The government relied solely on the hearsay testimony of Ms. Wilson, a known drug addict and co-conspirator, as told by the government agent, Agent Dyer. Simply put, sentencing counsel failed to put the government to the test. If entered into evidence, the lease would have done two things. First, it would have been an important factor in the fact-intensive analysis of whether Mr. Powell controlled access to the premises. Second, it would have undermined the government's sole piece of evidence. Again, the hearsay testimony of Ms. Wilson. With so little evidence on the government side of the scale, there's a reasonable probability that the lease could have tipped the scale in Mr. Powell's favor. Control of the premises, I grant you one easy way to prove that is by virtue of a lease agreement, but that's not the only way, right? And so, wasn't there other evidence in the record supporting at least constructive use of the premises? Your Honor is correct. There is another way to meet the maintenance prong other than just proving possessory interest. But that's a fact-intensive analysis, as this Court has told us. And in other times when this Court has upheld the premise enhancement, for example, in United States v. Clark, the defendant had had control of the premise, a key to the premise, bought an extra big gun to control access to the premise. And under a plain error review, this Court said that that case was a close call of whether the premise enhancement applied. So here, the government didn't put forward any evidence of that case. And furthermore, the lease would have undermined the government's sole piece of evidence. The district court's decision seems to say that the counsel, instead of pursuing the lease, used other—impeached the testimony in different ways. And so, I'm trying— And there's—I mean, the counsel said that. He said, you know, I'm familiar with this district. I've been here years practicing law, practicing criminal law. I'm familiar with the judges. You know, they oftentimes apply this enhancement when outside of a lease or ownership context. You know, given the reality from practicing law for years, that's not an effective use of— that's not the best way to impeach or it's not a necessary way to impeach. And, you know, we could criticize that. Obviously, you disagree with that. I respect that disagreement. Does that, though, fall in a counsel's, you know, ability to make strategic decisions about how to impeach or not? So, thank you, Your Honor. No, it does not. Why is that? It sounds like a strategy. I know what the courts do. That's not worth my time. I can do it this way. Why isn't that classic what lawyers do every day, who have to make decisions on a bunch of cases? Because in this case, sentencing counsel didn't do any factual investigation whatsoever. As this court told us in Elmer v. Osment, the failure to investigate, the failure to do a factual investigation, cannot be overcome later by the defense. Other than the lease, what would you point to that he could have used? I mean, he spent a fair amount of time on that enhancement, as well as others. He had like three or four enhancements he had to address. Actually, he spent more time on another one, which he thought was more serious. But he did object to it. He did cross-examine. He argued it to the court. It seems to me he didn't bypass it at all. He spent some time, but he recognized that the facts for that enhancement were coming from this woman through hearsay. And he attacked that or tried to attack that. The question, I guess, is who else or what else should he have put on, set aside the lease? Is there anything else he could have done other than what he did? I mean, he did a fair amount of response to that enhancement. It was a two-level enhancement? It was, yes. Yes, Your Honor, it was a two-level enhancement. Well, in this case, the lease is the only thing that's come in at the evidentiary hearing below. But Mr. Woodward had the obligation to do at least a cursory investigation into the premise enhancement. And even that cursory investigation— I know, but what did you report that he would have done? Who would he have talked to or gone to or what? We already have the testimony of the one person that's in the record and was in some detail about the transactions at the apartment. What did you think he was required to do? He was required to find the lease, Your Honor. He was required to find the lease, a legal document, a fairly easy and readily accessible piece of paper, to prove that his client didn't have a possessory interest in the apartment. Well, the lease, all it would have proved was that, at best, it seems like, is that Brown was not the tenant prior to January of whatever the year. 2016, Your Honor. So it might have proved that. Yeah, Mr. Powell, when he testified, didn't say anything about, okay, I wasn't using that premises before January of 2016. Didn't say I haven't used that premises for drugs. They just challenged the existence of the lease. So that's something. I mean, it undermines Wilson to some extent, but it doesn't disprove Wilson. It just says maybe there's a question there because Brown's lease was only for a shorter period of time. We don't know who leased it before. It may have been someone else. And my point in that is Mr. Powell testifies and he doesn't provide any – you would think if this is all made up and it just all started in January, he would say that. He didn't say that. Well, Mr. Powell told his sentencing counsel before sentencing that the apartment wasn't his, that he didn't use it, and that Ms. Wilson was lying. But in this case, this lease would have been a key piece of evidence in this fact-intensive inquiry. And when the government's evidence is so slim, like the government's evidence was in this case, I mean, again, this is a hearsay testimony of a drug addict. Sure, sure. And the lease also would have undermined Ms. Wilson's statement that she went to the same apartment for a period of five years. As we see here, the lease was only valid for five months prior to Mr. Powell's arrest. What about the district court saying that basically I would have – that there was testimony to support the enhancement, that Wilson's testimony was enough, and then saying that I would likely have applied the enhancement either way? Yet, particularly on that second point, we have an opinion, Freeman, that I know you know about. Very intimately. Well, I won't say I do, too. But that seems fairly different because in Freeman, the sentencing judge at the end of the sentence said, if I had made any mistakes here, I would do the same thing. Which, you know, we said, look, you can't do that. You can't just, at the end of the thing, have a prophylactic statement that immunizes any mistake you make. But here we don't have that. Here we have the same judge who applied the enhancement looking at the specific challenge and would say, despite that, I would do the same thing. That seems, in face of that testimony, I'm just trying to figure out how you can say, A, it's not different than Freeman, and B, how you're prejudiced. Well, I think that this is very similar to Freeman. First, for a couple of reasons. One, just like in Freeman, here the district court is essentially immunizing its own error on the prejudice analysis. The prejudice analysis is a legal analysis that this court should review de novo. Second of all, Strickland tells us that the prejudice analysis is an objective analysis into what a sentencing court would have done, not an analysis into what this judge would have done had the circumstances been different. So for that reason, the district court statement of what the district court would have done had the circumstances been different shouldn't be given any more credence than any other legal conclusion made by a district court. So it's subject to de novo review. So here also, when we were asking the question of strategic choice, the sentencing counsel said at part of the 2255 hearing that in a scope of the case, a scope of a case like this, you know, two points wasn't going to be make or break. That's not the case. Those two offense level points increase the top of Mr. Powell's guidelines range by nine and a half years and the bottom by five and a half years. This isn't a case where there's a rounding error. This is at least half a decade, if not almost a full decade of a man's life. And sentencing counsel didn't even look for this piece of paper, this legal document that could have been. There's a reasonable probability that this document could have tipped the scale into Mr. Powell's favor. And again, it's not only that he didn't look for it, right? There was evidence that he was handed it. And Mr. Powell said that he told him about it, that he brought it up again at the sentencing hearing, that he asked his girlfriend to fax it to him. Now, the district court doesn't make any factual findings. And that's part of the problem. I think the district court looks like just went straight to the prejudice prong and tried to, as you described it, insulate the analysis by saying I would have done the same thing anyway. It wouldn't matter, but it would have been quite helpful if we'd had some findings. Yes, Your Honor, it would have been helpful. But in this case, it doesn't, whether or not Mr. Woodward ever actually received the lease and whether or not the lease ever made it into his file or not, a reasonably diligent counsel should have looked for the lease independently. And here, again, Mr. Powell is saying that he's essentially screaming at his counsel, find this lease, find this lease, find this lease. And he asks his girlfriend to fax it. Now, Mr. Woodward says he would never swear under oath that a piece of paper couldn't get lost in his office. Whether Ms. Brown didn't send it or it didn't go through or it somehow didn't end up in his file, regardless, he should have looked for it and he should have found it. This isn't some incredibly hard hidden evidence. This isn't some complex forensic search. This is a legal document that a simple call to the apartment complex, he could have gotten it. Is there evidence in the record that, well, the court, again, didn't make any findings, but that Mr. Powell was the lessee of the premises? There is no record. There's nothing that suggests that he was the lessee of the premise. So what would this fact then refute? I mean, the existence of the lease refute if there wasn't any evidence suggesting that he did rent the premises. So it would undermine, again, Ms. Wilson's testimony. So Ms. Wilson's saying that she's going to the same place for a period of five years, but the lease was only for a period of five months. And, again, in a case like this where there's so, so little evidence on the government side of the scale, this would have undermined Ms. Wilson's credibility. But why does it necessarily undermine her credibility? It undermines her credibility only if the position is Ms. Brown has been the tenant those five years. Well, yes, Your Honor, but it raises and complicates a very key question of, okay, well, if there's a lease for five months, how was this happening for a period of, what, four years, seven months? Did Powell put in the record that I haven't been there for those five years? Mr. Powell tells his sentencing counsel that it wasn't his apartment and that he wasn't using it for narcotics. Now, it's his girlfriend's apartment. I mean, I think he's going to it. Did he say when he testified at the hearing that I was only there from January on? At the hearing, that wasn't a question that was asked or a topic. His counsel didn't ask him and nothing caused that to come up. All he did is talk about the lease, right? To my recollection, Your Honor, yes. And he talks about what he told his counsel and what he asked his counsel to do. So I see my time is almost up. Does the Court have anything else? Thank you, Ms. Maloney. Mr. Kapoor? Good afternoon, Your Honors, and may it please the Court. Pathan Kapoor on behalf of the United States. The Court should affirm the denial of Mr. Powell's ineffective assistance claim as he has failed to meet his burden on either of Strickland's prongs. His counsel's performance was reasonable. Before sentencing, Woodward met with the defendant several times to discuss the PSR and Mr. Powell's objections. Powell wanted Woodward to object to the application of premises enhancement. Woodward did so. Powell told him the basis for the objection was that Valerie Wilson was lying. So Woodward took reasonable measures to attack her credibility, first in the sentencing memo, then in cross-examining Agent Dyer, and then again during argument. Nothing more was required. The defendant cites no case supporting the proposition that a lawyer who objects to a sentence enhancement and zealously argues against the enhancement for the reason the client gave him can still render a performance that is so unprofessional as to make it constitutionally deficient. That is enough to affirm. That strikes me as a pretty limited sort of view of what a lawyer should do. Sure, you listen to your client. He tells you a reason why you think a particular line of defense is viable, and you certainly pursue it. But you're suggesting that that ends the inquiry as far as the lawyer is concerned? In the context of evaluating whether the performance was so deficient to render the adversarial process defective, yes, Your Honor. Again, I think the inquiry here is not did counsel make errors or was there some more that he could have done or, you know, did he get a C-plus in his representation of Mr. Powell. The question is did the adversarial process itself break down. And I think the important point to remember here is the parties agree that the key issue with respect to applying the enhancement was Valerie Wilson's credibility. Both sides agree that the application of the enhancement was based on her statements to Agent Dyer. So the question then becomes, okay, how should this lawyer go about undermining the credibility of the government's sole witness whose statements are presented through Agent Dyer? And Mr. Woodward uses the same lines of attack that Mr. Powell continues to maintain. Valerie Wilson's a drug addict. Her statements are unreliable because she's a co-conspirator. So she has an incentive to maximize her value to the government. It's in that context that we're arguing that nothing more is required. Another point to make here, Your Honor, is that it's not entirely clear what the lease would have shown. So to begin with, Mr. Woodward refutes the idea that he was aware of the lease, that he was made aware of the lease. He repeatedly says, I croned through my files. But what about since the district court did not decide that issue? How do we resolve it? There's a couple different ways, Your Honor. First, you need not make any finding on the performance prong at all if you find that Mr. Powell wasn't prejudiced by the representation. So one option you have is just to simply not address it. If you did want to address it, the district court actually does make several findings that could give you comfort on the performance prong too. I mean, first, in the evidentiary hearing, she notes that because she's had experience with Mr. Woodward over several years, he's a, quote, honorable man of this court. He'll tell us that he has this in his files. I'll also point out that when Mr. Powell was testifying at the evidentiary hearing, he actually provides statements that bolster Valerie Wilson's credibility. He agrees on cross-examination that he supplied Valerie Wilson with drugs multiple times over several years. That's at the Joint Appendix of 344. What that fact shows is that at least part of her statements were credible. She's saying, I went to this place since 2011 to purchase drugs on several occasions. And he's acknowledging, yeah, I supplied her with drugs multiple times. Well, that's all the more reason to try to find other avenues to attack her credibility. And, again, Your Honor, if you think that Woodward made mistakes in his representation, you know, errorless representation is not the standard. The standard is, was his performance so unprofessional that it fell below what the Constitution requires? And even if there were other possible avenues to impeach Ms. Wilson, to attack her credibility, now we're arguing over selected strategy. And in Strickland itself, the Supreme Court counsel cautioned that the purpose of this inquiry is not to sort of have a second trial and this trial be about counsel's unsuccessful representation. The purpose is, with respect to the sentence enhancement, was what the district court presented sufficient so that there was adversarial testing of the facts? What's your, help me a little bit on point one with your argument. Are you arguing, you began by saying that the standard for ineffective assistance is high and Mr. Woodward's representation did not rise to that level, even if it wasn't perfect? Paraphrasing, but basically that. There's, as you were just kind of alluding to, there's another concept of strategic choices and that can really come in and maybe even, you know, make it even more difficult to show ineffective assistance if it's a strategic choice. Is your position that he did make a strategy decision, that that sort of deference we apply, or that, you know, he may not have been perfect and he just didn't rise to the level? I'm trying to see if you're employing the strategy argument. Well, it's kind of both, Your Honors. There's two options. You can either believe that he did have the awareness of the lease at the time that he's beginning to prepare for sentencing. And what we're arguing is if you think he was aware of the lease, or, you know, it was he obviously should have been aware of the lease, then it still would have been a reasonable strategic choice to say, okay, sure, Ms. Brown had this lease in her name from January 2016 to January 2017. I'm not really going to do anything with that fact. And that would have been a strategic choice. And what's the strategy behind that? One, because there's a risk that if Ms. Brown is called to stand, the government can cross-examine her, can ask the questions that Your Honor was asking about, you know, well, who had the lease before you did or did Mr. Powell ever come around? Does he have to, does the counsel have to identify that, you know, reason not to introduce the lease? I mean, Chief Judge Diaz just said, what's the downside? You're articulating one for that strategy deference to apply. Does the counsel have to say that's why I didn't do it? No, Your Honor, to my knowledge, there's not a requirement that the sentencing counsel affirmatively walk through sort of every aspect of his strategic thinking. He does give us a flavor for it in his testimony at the evidentiary hearing when he says, in my experience, I'm paraphrasing his words, but he says, in my experience, you know, defendants will have a safe place that they will likely use to keep narcotics in. One thing we can infer from that is it's not unreasonable to think that a drug dealer would have a premises in their girlfriend's name, in someone else's name, that he thinks of as a safe place to keep drugs in. And again, we get flavors from the evidentiary hearing where Ms. Rueber is basically saying, you know, I just don't think that the possessory interest is that key to the inquiry when you have these other indicia of maintaining the premises for the purposes of distributing drugs. And again, going back to Valerie Wilson's statements, which is the only basis for the application of the enhancement, she's saying, I came around this apartment a dozen times since 2011. And on one occasion, I saw him take delivery of a large quantity of heroin. And I heard him go to a back room and use either a blender or a grinder to cut the drugs. So in that context, you know, even if you're assuming Woodward knew about the lease or should have known about the lease, it's just not very clear what going down that rabbit hole was going to do for the application of the enhancement. Instead, I think he quite reasonably said, OK, if Ms. Wilson is in fact lying, let's show the district court the reasons why, you know, she has these incentives to lie. The other point I'll make on the performance problem is the duty to investigate should be evaluated in the context of what's going on. Strickland tells us that we have the duty to investigate is evaluated in the context of the circumstances. And here we're talking about a sentence enhancement to the advisory guidelines range. I think the cases that Mr. Powell cites are instructive because they show that this duty is sort of matched to what's at stake. So in Elmore, for example, there was forensic evidence that was, quote, you know, always and obviously vital to the government's entire case. And defense counsel didn't investigate that at all, instead relying on the trustworthiness of the forensic lab. And so Elmore in that context says you can't just, you know, fail to investigate this key piece of the government's entire case. Here we know that the lease wouldn't have made that much of a difference. One, because the district court told us, having expressly considered the lease and testimony. So at the evidentiary hearing, Mr. Powell now has a different counsel. Counsel presents what the lease would have said, presents what the testimony would have been. And it's after that that the district court makes the finding. Yeah, I still would have found Valerie Wilson credible. And that credibility finding was reasonable. Well, your colleague on the other side said that it's not a subjective test. It's an objective analysis. And so it doesn't really matter what this particular judge would have done, but what a reasonable judge would have done. So do you agree with that? I don't agree with that, Your Honor, because the district court was the fact finder and would be the fact finder on remand. So we know what kind of factual findings she would make. But even if you do agree with that and just look to this court's case law and assume, you know, say, for example, you were just making a determination based on the record, numerous cases from both before the time of sentencing and since confirmed that the possessory interest really wouldn't have mattered because of the other indicia that Mr. Powell was using the apartment to store drugs, to distribute drugs, and to sell drugs. So, you know, there's Christian, Holloman, Clark, Lothar, Stukes, and a variety of other cases that we cite in our brief, where even if it was a different fact finder presented with the same set of facts and the lease, Mr. Powell puts the lease on and says, look, Ms. Brown had the lease from January to January 2016 to January 2017. And then the government says, here are Valerie Wilson's statements. You could still make a finding that Valerie Wilson was credible. And again, like I said, the government could then go on and say, well, actually, doesn't it make it more likely that this house is being used as a stash house, at least for 2016, because it's in his girlfriend's name, citing cases suggesting that it's quite common for a drug dealer to use an apartment or a home that's leased in a co-defendant's name, a co-conspirator's name, a family member's name. So if hypothetically it is an objective inquiry, we would then need to decide whether the district court statement that it would have done the same thing is objectively unreasonable. Isn't that the implication of what I mean? I know you're saying you don't think that's the case. But then you said even if it is, you'd say it's objectively unreasonable. I'm trying to look at it a little bit different way, which is whether an objective standard would require us to say that what the district court said it would do is objectively unreasonable. If I understand your question correctly, if you did find that it was an objective standard on the prejudice prong, you would still have to go back and say, did Mr. Powell meet his affirmative burden of showing that there's a reasonable probability of a different outcome? And then you would evaluate any factual findings that were already made for clear error. So the facts that existed before the evidentiary hearing, Valerie Wilson's credibility, the district court's credibility determinations, were those clearly erroneous? And then you would have a de novo review of the actual legal conclusion. So you'd still be looking at the facts that exist in the record and evaluating the credibility determination under a clear error standard with the extra deference that's given to the credibility finding. Can you talk a little bit about the prejudice prong of this claim? Because in most cases, district courts and we sometimes go straight to that issue and assume deficient performance and decide on the basis of the record whether the result would have been different, whether, i.e., the defendant was prejudiced. We have some indication from the district court that it probably would have imposed the same sentence. I forget the exact language. And Judge Quattlebaum talked about our Freeman opinion because, and in that context, my first instinct was, well, if the district court is telling us that this all would not have mattered because the sentence would have been the same, then, you know, why are we here, assuming that that's not unreasonable? But Judge Quattlebaum, Freeman suggests that we don't do that in this context. And Judge Quattlebaum explained why he thinks this case is different. Do you think this case is different? Yes, Your Honor. I think it's important to understand that Freeman occurred in a very, very different context. And I think the factual context there is the reason why this court said, you know, a passing sentence from the district judge that says, I would have imposed the same sentence either way, doesn't immunize the decision for further review. So in Freeman, the district court never had the opportunity to have any adversarial testing of the facts in the PSR. And that's because after initially raising objections on the day of sentencing, counsel waived, affirmatively waived those objections to the PSR. And so the district court just adopted the findings back in full. Another key difference with Freeman is this court found that counsel's performance was so deficient that on a direct appeal, it could find there was ineffective assistance. And, you know, here, there the court said that counsel was unequivocally wrong on the law. So not only was it that he intentionally, you know, waived the objections, depriving the district court the opportunity to consider, are the facts in the PSR accurate? Should there be some testing of it? But also the court found that he was just clearly wrong on the law. Here, the district court considered the PSR, the findings from the PSR, the statements from Valerie Wilson. It also considered what effect the lease may have had. And it's far from clear that Mr. Woodward's theory that the lease wouldn't have mattered is clearly wrong on the law. In fact, I'm not aware of any case where, you know, there's evidence of a drug dealer using a premises for the purposes of drugs. And then he puts in evidence, well, actually, the lease was in someone else's name. And that fact has become dispositive. So both because the law doesn't strongly suggest that counsel is wrong, and because the district court has had the opportunity to consider that alternative world of the presentation of evidence, that you can rely on the district court's statement that it would have applied the enhancement either way, and that even if it didn't apply the enhancement, it still would have issued the same sentence. Well, it's that latter conclusion that I wonder still applies in light of Freeman. That's what I'm getting at. We said that it didn't there, but you say that it does here. It has some weight here. I think it can, Your Honor, because we know that the, and again, I understand that Freeman, the court said, you know, the fact that the district court says they likely would have imposed the same sentence doesn't matter. But here in the sentencing transcript, you see a lot of evidence of this being an individualized determination, where the sentencing guidelines didn't have the same degree of anchoring effect they would have in a usual case. Counsel, back to, I know you're, I want to hear what you're saying about the individualized part of the sentence. But before you get there, just following up on Chief Judge Diaz's question, you alluded to this, but in Freeman, the statement that I would have done the same thing anyway was not tied to any actual dispute, right? It wasn't tied to any other alleged error. It was just a free-floating statement in general. Here you have the identified error, a consideration of the evidence, and a statement that I would have done the same thing anyway. So at least on a factual statement, those are very different. Now, we still have the question of whether or not we consider it or not in a subjective versus an objective way. It seems to me just the way the language of I would have done the same thing, you, same thing, issued the same sentence is quite different. Yes, Your Honor, that's correct. How can you say you would have done the same thing when you don't know what the error is to begin with? I thought that was the gist of our criticism in Freeman, or at least a large part of it. Whereas here, you may disagree with that, but at least it's framed in the context of a specific issue that's being litigated and the evidence is being considered. Yes, that's correct, Your Honor. And we know that there's been that consideration, both for the reasons that Your Honor suggested, and also because the district judge showed that, you know, okay, the correct guidelines range would actually be this. I think 290 to 360, but then still said I would have given the same sentence. And last thing, and I'll be quiet, but I can't remember, but isn't there a Supreme Court case that, you know, that does look at that harmlessness? I forget the name of it right now. Maybe that's not ringing a bell, but I think there's a Supreme Court harmlessness case that would support at least looking at whether the same result would have happened. Is that fair? If there is, it's not coming to mind. I apologize, Your Honor. Well, I could easily be wrong on that. I will say Melina Martinez does leave open the possibility that a district court's statements about the sentence that it imposed can give this court comfort to say that it would have, and that's in our brief at the end. That may be what I'm thinking. Okay. I see my time has expired, so for the reasons we said, Your Honor, we ask that you refer. Thank you, Mr. Kapoor. Ms. Maloney, you have some rebuttal? Thank you, Your Honors. To address a few things brought up by my friend on the other side. First of all, prejudice is an objective determination. In Strickland, and this is using U.S. reporter sites, so 466 U.S. at 695, the Supreme Court said the assessment of prejudice should proceed on the assumption that the decision maker is reasonably conscientiously and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decision makers. This is an objective inquiry about whether there is prejudice. And to return to Freeman, Judge Quattlebaugh, you asked about, you know, do we give extra credence to a statement that's made later by the district court? And the answer has to be no. If this court, as this court decided in Freeman, that we don't give credence to what the district court said at the sentencing itself, then a post hoc statement of what a court could have done or would have done has to be given even less credence in this situation. But is the timing the issue? Or, again, I was just asking your colleague this. I mean, one of the things about Freeman that I think was a basis of that decision was that the statement wasn't tied to anything. It said I would have done the same thing without even knowing what the objection was. So how do you give it much credence if you don't even know what the issue is that's being considered? I'm sorry. My point being, I thought it was less about timing and more about the context. Well, so this court said that, you know, there's a presumption that when the incorrect guidelines range is applied, that incorrect application of the guidelines range will be prejudicial. So the question now is how do you overcome that presumption? And this case is not that case. You can't overcome it here. At sentencing, the court relied on the guidelines range. The court used it as an anchor for the entire sentencing analysis. The district court both starts and ends the sentencing discussion with a reference to the guideline range. And that's at JA 142 and JA 157. So the guidelines range is anchoring as it must throughout all of the sentencing analysis. So for the district court to later say, if the situation had been different, I probably wouldn't have done anything different, shouldn't be given any more credence than any other conclusion of law that a district court will make. And to go to the question of whether this was a strategic choice or whether Mr. Woodward made a strategic choice or not, this is not the type of strategic choice warranting this court's deference, even if it was a strategic choice. This was made after no factual investigation whatsoever. This is not a case of sentencing counsel poring over this lease for hours and hours, trying to come up with how best to use this evidence or not use the evidence. Is that required? I mean, the counsel says that having the lease, knowing that it was for one, you know, for less than a year, it wouldn't have made a difference to me. I think that's what he said. I would have done the same thing and approach this the same way. So, I mean, again, you may think that's, you know, that's not what you should do. You should do better than that. Doesn't that, however, I'm just trying to figure out why that isn't a strategic decision. So the sentencing counsel's post hoc explanation of trying to explain what he was doing or why he was doing it, again, shouldn't be given credence by this court. The sentencing counsel told us. Why not? You know, my whole reaction about the lease is, is that important? Is that going to make a difference? I mean, they found Powell right out there in front of the final chase. He was at the apartment and there were a lot of indications that he was linked to that apartment. And what difference does it make that the girlfriend had the lease or the boyfriend? He didn't have the lease. That's his attitude. And I was going to raise the question. And this prompts my question, I suppose, is it seems to me materiality comes into effect as to whether that's meaningful to this determination. While it is relevant, it is not necessary because the standard doesn't require a leasehold. It requires control and use and maintenance of that location as a as a place for distributing drugs. And so I took it from his saying it didn't it wasn't important to what I was trying to show. We were stuck with Wilson's testimony. We're stuck with his presence at the place. We're stuck with the agent's explanations. I have to attack that. That's where I'm going to get this maintenance issue. That's my sense I took from it. And so I question whether on that basis, if you say he should have gotten the lease, I'd say, is that material? I mean, it clearly is not required. And my guess is my guess is in most cases, the drug dealers don't own their cars and don't own their leases. I mean, in most cases, it's usually a girlfriend or something like that. It's for a lot of reasons that you might expect. So if you've been in this business for a long time, you say that's what I thought his attitude was, which is a judgment call. My time's expired. No, please, please respond. OK, so Mr. Powell was entitled to defense tailored to his case, not to that of some long gone generic defendant that may have happened in other cases. Oh, yes. But the attorney who takes the attitude I just told you is making a judgment call as to what is going to work and what's not going to work. And he's been around for a long time. And the fact that this guy wasn't the lessee, he's going to say to himself, what difference does that make? And now the question comes, oh, well, maybe he could impeach Wilson and all that. But that assumes that he knows all the police, who's before and who's after and who's girlfriend and who's he going out with at the time. We have direct testimony that from Wilson that provides evidence of the enhancement. And as a consequence, he said, I got to go back to that. That to me is a typical judgment call that a lawyer makes. Well, Your Honor, if it's not a judgment call, then it's a question of was it material? I mean, would it have made a difference if he had the lease? Would he have done anything differently? And would the court have come to any different conclusion? I think the court was convinced that the enhancement was appropriate. What Wilson said, I mean, sure, impeach Wilson. Does that mean you suggest that that would have thrown all everything Wilson said out the window when Powell himself confirmed a lot of what she said? Well, yes, Your Honor. Here, since the government's evidence is, again, so slim. I mean, they're relying entirely for this premise enhancement on the hearsay testimony of a drug addict and a co-conspirator. And would have that added anything if I'm a judge and you tell me the drug dealer didn't have a lease for that apartment? My reaction is so what? It's his conduct. It's where he locates. And I mean, he may have had a colleague's friend's apartment or a girlfriend's apartment. And I must say, this is a very improvised arrangements. All these drug conspiracies, stash houses and so forth. It's their arrangements that are put together for inconvenience with fear of getting caught. And so anything that identifies them, the question is, is that a big deal? And I don't know. I guess your argument would be that the lease might undermine what Wilson said. Maybe, maybe not. The lease would have undermined what Miss Wilson said. Miss Wilson saying she's going to the same place for five years. And the lease is, again, only for a period of five months. Yeah. That was never investigated by a sentencing counsel. And that make a difference. Well, that was not put into evidence what was happening at that apartment before. But a reasonably diligent sentencing counsel would have looked into that. And Mr. Sentencing counsel. So he's going to investigate it. He's going to get go to the landlord and get who was in the lease before and get afterwards. And what the relationship with when Brown's relationship began with Brown and after and all this stuff. And he's going to spend all this time when he's got three other enhancements he has to focus on. And that this one probably isn't going to make that. That's what he's thinking. Because so. So what? The drug dealer doesn't own the apartment. That isn't the issue. The question is, did he maintain or control the apartment for use of drugs? And we have direct testimony that he did. And so your argument has to be, well, that direct testimony is so impeachable that I understand. Thank you, Miss Maloney. Thank you. I want to thank both counsel for their fine arguments this afternoon. Miss Maloney, my docket, she doesn't show whether or not you were your firm were court appointed. I'm not going to make the inquiry, but you look to these old guys as a younger lawyer. We may or may not have appeared for the first time before a court. First time you did a fine job representing Mr. Powell. And thank you for doing that. And your colleagues for allowing you to do that. And this is for an excellent job as the representative of the United States. We're always aided and we have good lawyers helping us in these often difficult cases. We'll come down and greet counsel and adjourn for the day.
judges: Albert Diaz, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.